■ In the Matter of JAMES U., Respondent, v CATALINA V., Appellant. (Proceeding No. 1.) In the Matter of CATALINA V., Appellant, v JAMES U., Respondent. (Proceeding No. 2.) (And Another Related Proceeding.) [56 NYS3d 642]—

Egan Jr., J. Appeal from an order of the Family Court of Sullivan County (McGuire, J.), entered July 24, 2014, which, among other things, in proceeding No. 2 pursuant to Family Ct Act article 6, established a visitation schedule for respondent and imposed certain restrictions upon petitioner's travel with the subject children.

The underlying facts are more fully set forth in our decision in *Matter of Lee-Ann W. (James U.)* (151 AD3d 1288 [2017] [decided herewith]). Briefly, Catalina V. (hereinafter the mother) and James U. (hereinafter the father) are the parents of a daughter (born in 2008) and a son (born in 2012). Following the deterioration of the parties' relationship, the mother left their shared home in March 2013 to visit family in Puerto Rico and, when it became apparent that the parties' difficulties could not be resolved, the father commenced proceeding No. 1 in May 2013 seeking custody of the children. The mother was served with the petition in Puerto Rico in June 2013, appeared

telephonically and was directed by Family Court to return to New York. When she did so in July 2013, the mother cross-petitioned for custody (giving rise to proceeding No. 2), filed a family offense petition against the father and made a hotline report alleging that the father had sexually abused the daughter—resulting in the commencement of a Family Ct Act article 10 proceeding by the Sullivan County Department of Family Services.

Following a lengthy combined hearing on all of the petitions, Family Court, in the context of the Family Ct Act article 10 proceeding, adjudicated the daughter to be an abused and neglected child and made a derivative finding of neglect as to the son. The father appealed, contending that there was insufficient evidence to corroborate the daughter's statements to investigators and, as such, the findings of abuse and/or neglect could not stand. Upon appeal, we agreed that the allegations of abuse were not sufficiently corroborated but, finding that the father's own testimony corroborated the allegations of neglect, upheld that portion of Family Court's determination finding that the father had neglected the daughter and had derivatively neglected the son (*Matter of Lee-Ann W. [James U.], supra*).

As for the related Family Ct Act articles 6 and 8 proceedings, Family Court, among other things, awarded the mother sole legal and physical custody of the children, sustained the family offense petition, established a visitation schedule for the father and precluded the mother from traveling with the children outside of the continental United States without the father's permission. The mother now appeals, taking issue with the visitation schedule fashioned for the father and the travel restrictions imposed upon her and, further, contending that Family Court exhibited bias against her and abused its discretion in discontinuing the services of her court-appointed interpreter.

Beginning with the issue of the interpreter, Family Court is required to appoint an interpreter for "an interested parent . . . of a minor party in a Family Court proceeding" if the court determines that such parent "is unable to understand and communicate in English to the extent that he or she cannot meaningfully participate in the court proceedings" (22 NYCRR 217.1 [a]). "The determination [as to] whether a court-appointed interpreter is necessary lies within the sound discretion of the trial court, which is in the best position to make the fact-intensive inquiries necessary to determine whether there exists a language barrier such that the failure to appoint an interpreter will deprive [an individual] of his or her constitu-

tional rights" (*Matter of Edwin N.*, 51 AD3d 928, 928 [2008] [internal quotation marks and citation omitted], *lv denied* 11 NY3d 705 [2008]; *accord Matter of Ejoel M.*, 34 AD3d 678, 679 [2006]).

Here, Family Court initially indicated that it would appoint an interpreter if the mother was more comfortable conversing in Spanish and, throughout the majority of the ensuing hearings, an interpreter was present for the proceedings. However, after many months of observing and interacting with the mother, listening to her testimony (during which she often responded in English) and ascertaining that she had taken college-level courses in the United States and passed real estate licensing examinations that were written in English, Family Court determined that a court-appointed interpreter no longer was necessary. While the mother may have "had an imperfect grasp of the [English] language" (*People v Avery*, 80 AD3d 982, 984 [2011], *lv denied* 17 NY3d 791 [2011]), our review of the record confirms that her answers to the questions posed to her were responsive. More to the point, even accepting that the record contains conflicting proof as to the mother's proficiency in English, Family Court—having had ample opportunity to assess the mother's capabilities first hand—was in the best position to ascertain the need for an interpreter, and we do not find that Family Court abused its discretion in discontinuing the services of the court-appointed interpreter.* The mother's related claim—that Family Court exhibited bias against her—is unpreserved for our review (*see Matter of Patrick EE. v Brenda DD.*, 129 AD3d 1235, 1238 [2015], *lv denied* 26 NY3d 908 [2015]) and, in any event, is unsupported by the record. To the contrary, Family Court's identification and/or criticism of the mother's and the father's respective parental shortcomings was quite evenhanded.

Turning to the travel restrictions imposed upon the mother, Family Court is vested with the discretion to place reasonable travel restrictions upon a parent—including geographical limitations—and, so long as the limitations put in place are supported by a sound and substantial basis in the record, Family Court's findings on this point will not be disturbed (*see generally Matter of O'Neil v O'Neil*, 132 AD3d 680, 681 [2015]; *Mat-*

---

* We note in passing that the psychologist who interviewed the parties and their children testified that, although the mother required some assistance in responding to the written tests that he administered to her, the mother "indicated that her first language was English," and he, in turn, found the mother to be "quite conversant" in English, thereby obviating any need for him to utilize an interpreter.

*ter of Rosetta BB. v Joseph DD.*, 125 AD3d 1205, 1206-1207 [2015]). Here, the record reflects that the mother has substantial family ties to Puerto Rico, and the father testified—without contradiction—that the mother had a history of leaving New York on short notice, for extended periods of time and with only vague or indefinite plans to return. Additionally, the evaluating psychologist expressed concerns regarding the mother's tendency towards "gatekeeping," i.e., using her status as the custodial parent to keep the children away from the father. Given such proof, and in light of the mother's precipitous departure to Puerto Rico in March 2013, her subsequent attempt to commence a custody proceeding there and her corresponding failure to return to New York until instructed to do so by Family Court in June 2013, we discern no basis upon which to disturb Family Court's sound determination that the mother should not be permitted to travel with the children outside of the continental United States without the father's permission.

Finally, as to the issue of the father's visitation, we note that the supervised visitation schedule imposed by Family Court recognized the uncontested, long-standing and positive bond between the father and the children and was consistent with the recommendations made by the evaluating psychologist. Additionally, the supervisors selected by Family Court were fully vetted during the course of the dispositional hearing. Accordingly, we are satisfied that Family Court's determination in this regard is consistent with the children's best interests and has a sound and substantial basis in the record. The mother's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Garry, J.P., Rose, Devine and Aarons, JJ., concur. Ordered that the order is affirmed, without costs.